BEATTY, Justice.
This is an appeal from an order granting a motion to quash service. The parties agree that the issue is whether the Mobile Circuit Court erred in holding that it had no jurisdiction over the defendants, FirstSouth Federal Savings & Loan Association (“FirstSouth”) and Multi-State Real Estate Management Company (“Multi-State”). FirstSouth is an Arkansas banking corporation and Multi-State is a joint venture enterprise composed of two Arkansas corporations.
The jurisdiction issue arose out of a lawsuit filed by Mrs. Vesta Patrick against a number of defendants, among them First-South and Multi-State. Her action itself was the culmination of a condominium project that soured. Mrs. Patrick, the owner of certain beach-front real estate near Fort Morgan, entered into an agreement, *1329 the “Fort Morgan Joint Venture Site Acquisition Agreement” (“Joint Venture”), whereby she agreed to convey that real properly to Joint Venture for use as a condominium site. Mrs. Patrick also agreed to take a mortgage from Joint Venture as security for payments due her, but. to subordinate her mortgage to all mortgages given by Joint Venture to secure construction loans made by others to Joint Venture.
On May 25, 1982, defendant FirstSouth obtained a mortgage on the site property from the Joint Venture in consideration for construction loans made for the project’s development. At the time this loan was originated, Mike Murphree, a senior vice president and branch administrator of FirstSouth, visited the Fort Morgan site in Alabama in connection with the loan origination, and he made at least two other such visits. Thereafter, John Kelly, another senior vice-president of FirstSouth, visited the Fort Morgan project four or five times for the purpose of observing the status of construction and conducting on-site inspections. Some of Kelly’s visits were independent, insofar as other participants were concerned, and unannounced.
It was also shown that FirstSouth was the lender on another Alabama project, Sand Key on Perdido Bay, and that its representative made several visits to that jobsite for business purposes.
Additionally, FirstSouth engaged the services of a Gulf Shores, Alabama, lawyer to conduct a title search regarding the subject real property, paid him an attorney fee for the loan closing, and disbursed various sums as construction monies through agents in Alabama.
Unfortunately, the condominium project was not completed, and FirstSouth assigned its mortgage to co-defendant Multi-State, which thereafter foreclosed the mortgage.
Mrs. Patrick filed this action in Baldwin Circuit Court against FirstSouth and Multi-State, alleging negligence, fraud, breach of contract, and outrageous conduct in the administration, management, and distribution of construction loans on the project and in the oversight of the development. Service was obtained on FirstSouth and Multi-State by certified mail.
Ultimately, the case was transferred from Baldwin County to Mobile County, and the defendants moved to quash service. FirstSouth alleged that it was a foreign corporation and not doing business in Alabama. Multi-State alleged the same ground, and additionally insisted that service upon it was improper because service was made upon it by service upon First-South, which, Multi-State alleged, was not an agent of Multi-State. The trial court granted the motions to quash.
I. FirstSouth.
FirstSouth insists that, as a foreign corporation with no place of business in Alabama, with no “minimum contacts” in Alabama it was not amenable to suit in this state for merely taking and holding a mortgage on the Fort Morgan property, citing, inter alia, Alabama Constitution of 1901, Amend. 154, § 1, which states in pertinent part:
“Any corporation which is not organized under the laws of this state and has no place of business in this state may take and hold mortgages on real property located within this state, deposit the proceeds thereof in a bank account, or bank accounts, in this state, collect the debts secured thereby and may appoint a custodian or collection agent, who must be duly licensed under the laws of this state, to engage in the business of mortgage loan broker, to hold for such nonresident such securities, collect such debts, manage any property acquired by foreclosure thereof, sell and dispose of any property acquired by foreclosure thereof and enforce the provisions of such mortgages and no such foreign corporation shall be deemed to be doing business in this state solely by reason of doing any or all of the acts designated herein.... Any foreign corporation which engages in any of the acts prescribed in this section may sue or be sued in this state in relation to any such mortgages held by it, or real property, securities or debts acquired by it *1330 and service of process may be perfected upon such foreign corporation by service upon any resident licensed mortgage loan broker appointed as custodian or agent by such corporation in this state.” (Emphasis added.)
In considering the language of this amendment, this Court in Weninegar v. S.S. Steele & Co., 477 So.2d 949, 953-54 (Ala.1985), stated:
“In Midwest Homes Acceptance Corp. v. Langdon, 287 Ala. 521, 253 So.2d 29 (1971), we stated that Amendment 154 was ‘designed to permit foreign corporations to lend money to residents of Alabama and to take security for such loans in the form of mortgages on real property located within the state, and to enforce such obligations in the courts of Alabama.’ 287 Ala. at 523, 253 So.2d at 30. Prior to adoption of Amendment 154, all contracts made in this state by any foreign corporation which had not first qualified to do business in Alabama were void at the option of the other party to the contract. Code 1940, Title 51, § 342. After the adoption of Amendment 154, the legislature amended the foreign corporation statute to provide that any contract made in this state by a corporation which has not yet qualified to do business in this state is void at the option of the other party to the contract ‘unless said contract ... consists of a mortgage upon real property.’ Code 1975, § 40-14-4 (emphasis added [in We-ninegar ]).
“Clearly, the sole purpose of the constitutional amendment was to allow a foreign corporation to enforce a mortgage agreement on Alabama property. Moreover, the express language of the amendment is that a foreign corporation holding a mortgage on Alabama property ‘may sue or be sued in this state in relation to any such mortgages held by it.’ It seems to be the position of the Bank that this language would allow only causes of action related to the validity of the mortgage itself or the indebtedness secured thereby. We find this position to be untenable. Instead, the suit is ‘in relation’ to the mortgage if it is brought as a result of an alleged failure of a party to meet any obligation provided for in the terms of the mortgage_ [Emphasis added.]
“Alabama courts do have in personam jurisdiction over the Bank by virtue of Amendment 154 and Rule 4.2(a)(2)(F). We find that there are sufficient contacts between Alabama and the Bank to make it fair and reasonable that the Bank come to Alabama to defend.”
Under this authority, therefore, not only may a foreign corporation enforce a mortgage agreement upon property located in Alabama, but that foreign corporation also is amenable to suit in Alabama when the subject matter of that suit is “in relation” to the mortgage, i.e., “is brought as a result of an alleged failure of a party to meet any obligation provided for in the terms of the mortgage.” 477 So.2d at 953.
Nothing in that amendment, or in the Weninegar decision, places a limitation on the amenability of a foreign corporation to an Alabama action if that corporation has sufficient contacts with this state. Indeed, under Rule 4.2(a)(2)(A), (C), and (F), A.R. CÍV.P.,[1] the above-described acts of First-South’s officers provided sufficient contacts with this state “to make it fair and reasonable that [FirstSouth] come to Alabama to defend.” 477 So.2d at 954.
II. Multi-State
Multi-State argues that it was properly dismissed as a party because it had insufficient contacts with Alabama to constitute doing business. That position is untenable in view of the terms of Rule 4.2(a)(2)(A) and (F). Multi-State was an assignee of FirstSouth’s mortgage on the *1331 Fort Morgan property and foreclosed that property, with a third party buying it. This conduct on Multi-State’s part clearly constituted “transacting any [legal] business in this state” and “having an interest in ... real property in this state.”
Alternatively, Multi-State argues that it was improperly served because it was served by process served upon First-South, apparently on the theory that an agency relationship existed between the two. While such facts may require plaintiff to effect proper service, they do not in and of themselves remove Multi-State from amenability to suit in Alabama through out-of-state service of process.
Finally, Multi-State argues that there is no privity of contract between it and plaintiff. Respectfully, we point out that this argument is premature in the direct context of the jurisdictional issue.
Let the judgment be reversed and the cause remanded for an order consistent with this opinion and for further proceedings. It is so ordered.
REVERSED AND REMANDED.
MADDOX, ALMON, ADAMS and HOUSTON, JJ., concur.

. Rule 4.2(a)(2):
"(A) transacting any business in this state;
[[Image here]]
“(C) causing tortious injury or damage by an act or omission in this state including but not limited to actions arising out of the ownership, operation or use of a motor vehicle, aircraft, boat or watercraft in this state;
[[Image here]]
“(F) having an interest in, using, or possessing real property in this state...."